Richard L. HERMANN, Phillip Mattison, James M. Schoemperlen, Juan C. Beltran, Cary Berkowitz, Robert Berman, Clifford Blackwell, Joanne T. Bontkowski, Suzanne Brandner, George M. Briody, Barton F. Cameron, Dan U. Cameron, Douglas H. Cameron, Marion K. Cameron, Palmer W. Cameron, James G. Campbell, Edmund J. Cepulis, Mildred E. Chupich, George Cibon, Donald Clark, Ted Compall, Robert E. Cowhey, Dan Cox, Robert J. Darnall, Robert W. Davies, David J. Doerge, Stuart Ellison, Joseph Fehsenfeld, Theodore W. Filson, Ralph C. Glans, David Glickman, Gregory K. Goethal, Carlos A. Gonzalez, Howard C. Grant, Mike Grover, Steve R. Hall, Karen A. Hamm, John M. Hanson, Robert H. Harper, Erwin R. Herz, Donald C. Holst, Charles Ifergan, Allan Inbinder, Melvin F. Jager, Robert Kelman, Jim King, Raymond W. Kline, Jr., John T. Lauer, Terrence J. Lauer, Rhonda L. Levin, Mary Ellen Loofbourrow, Gerald R. Lynch, Richard L. MacGregor, Ethel A. Marett, Don W. Matheny, D. Chet McKee, John J. McKenna, John Mengel, Marion J. Mitchell, Vincent Micuch, William Mueller, William G. Myers, Larry Nendze, David A. Novak, Richard A. Nunemaker, Lucille M. Papendorf, Jon H. Rasmussen, Harold Rider, M.B. Rude, Trudy Schwartz, David Semmel, Michael J. Sherman, William G. Shold, Myron Shure, James P. Soper, III, Barry M. Stagl, Donald Stephens, Allan J. Sternstein, Steven M. Stone, John F. Stoner, Donald J. Svachula, Steven Szczepanski, Magdalena O. Valle, William L. Weiss, Frances Whiteford, Helen M. Wydra, Susie Zeiser,

Paul Balter and Reid S. Barker, Plaintiffs-Appellants,†

v.

Town of Delavan and Town of Delavan Board of Review, Defendants-Respondents.

Court of Appeals

*No. 96–0171. Oral argument October 30, 1996.—Decided December 27, 1996.*

(Also reported in 560 N.W.2d 280.)

†Petition to review granted.

On behalf of the plaintiffs-appellants, there were briefs by *Alan Marcuvitz and Robert L. Gordon* of *Weiss, Berzowski, Brady & Donahue* of Milwaukee. There were oral arguments by *Robert L. Gordon.*

On behalf of the defendants-respondents, there was a brief by *Steven R. Wassel and Steven C. Harvey* of *Law Offices of Wassel, Kilkenny, Danz, Mistrioty & Lettenberger* of Delavan. There were oral arguments by *Steven R. Wassel.*

Before Anderson, P.J., Brown and Snyder, JJ.

SNYDER, J. Eighty-nine Town of Delavan residential property owners (hereinafter, the taxpayers) appeal from a dismissal of their § 893.80, STATS., complaint alleging that the Town's system of property tax assessment is unfair and violates the uniformity clause of art. VIII, § 1 of the Wisconsin Constitution.[1] The circuit court dismissed the taxpayers' action for failure to state a claim upon which relief can be granted, see § 802.06(2), STATS., concluding that the taxpayers had failed to exhaust exclusive statutory remedies addressing the complaint's overassessment claims. We agree and affirm the dismissal of the taxpayers' complaint.[2]

The threshold issue presented is whether the taxpayers' action, which they concede does not comply with the ·statutory procedures for contesting a residential property assessment, can be maintained. The taxpayers reason that they are entitled to challenge the assessment process "in a forum entirely

[1] The uniformity clause found in art. VIII, § 1, begins "The rule of taxation shall be uniform" and requires that the method or mode of taxing real property must be applied uniformly to all classes of property within the tax district. *State ex rel. Hensel v. Town of Wilson,* 55 Wis. 2d 101, 106, 197 N.W.2d 794, 796 (1972).

[2] The taxpayers also ask for a refund of the excess 1994 real estate taxes paid. The legislature has provided a procedure for recouping excessive assessment payments in § 74.37, STATS. The Town argues that the taxpayers have filed individual § 74.37 claims as a group under the guise of alleging a constitutional uniformity issue. Because the taxpayers concede that their complaint does not seek § 74.37 relief, we need not address whether their complaint states a claim under that section upon which relief may be granted.

unrelated to the individual assessment appeal process" because their complaint contests the constitutionality of the Town's assessment process rather than the value of individual property assessments.[3] They further claim that the complaint is valid because it states a claim which "*precisely* establish[es] a constitutional violation."

In determining whether a complaint should be dismissed for failure to state a cause of action upon which relief may be granted, the facts pled are taken as admitted. *Evans v. Cameron,* 121 Wis. 2d 421, 426, 360 N.W.2d 25, 28 (1985). The purpose of a motion to dismiss for failure to state a claim is to test the legal sufficiency of the complaint. *Id.* Whether a complaint properly pleads a cause of action is a question of law which we decide without deference to the circuit court. *Heinritz v. Lawrence Univ.,* 194 Wis. 2d 606, 610, 535 N.W.2d 81, 83 (Ct. App. 1995). Since pleadings are to be liberally construed, a claim will be dismissed only if it is " 'quite clear that under no conditions can the

---

[3] Forty-three of the eighty-nine taxpayers had individually contested their property tax assessments before the Board of Review pursuant to § 70.47, STATS., prior to joining in this action. The record indicates that at least one of the taxpayers, James M. Schoemperlen, who sought Board review, appealed the Board's decision to the circuit court. None of those who sought prior Board review alluded to doing so in the complaint. The remaining forty-six taxpayers are challenging their lakefront property assessments for the first time in the instant case. Because we conclude that none of the taxpayers may proceed outside of the statutory board of review process, we do not address the Town's contention that the forty-three who pursued Board review exhausted their remedies.

plaintiff recover.' " *Evans,* 121 Wis. 2d at 426, 360 N.W.2d at 28 (quoted source omitted).

■

Sections 70.47(13), 70.85 and 74.37, STATS., provide the exclusive method for residents to challenge a municipality's bases for the assessment of individual parcels. *See Bourque v. Wausau Hosp. Ctr.,* 145 Wis. 2d 589, 594, 427 N.W.2d 433, 435 (Ct. App. 1988) (when the legislature provides a comprehensive statutory remedy, it is deemed to be the exclusive remedy). The taxpayers concede that each of the above statutory sections requires that the property owner first appeal the assessment to the board of review.[4] Nonetheless, they argue that board of review appeals are not the exclusive remedy if residents challenge the constitutionality of the entire assessment process. They contend that because their complaint "does not seek a *reduction* in any individual assessment, but rather an order voiding the Town's *entire* 1994 assessment," it falls outside of the legislatively-mandated procedure for contesting a property tax assessment.[5]

---

[4] The taxpayers' brief also notes the one narrow exception to this requirement. Under § 74.37(4)(a), STATS., a property owner who does not receive notice of an increased assessment is permitted to file a refund claim without appearing before the board of review.

[5] The complaint filed by the taxpayers, however, specifically requests "*a reassessment of the Lakefront Properties* in a manner which brings the 1994 assessments of those properties into an equitable relationship with the 1994 assessments of Inland Properties in the Town, notwithstanding that such reassessment may cause the 1994 assessments of the Lakefront Properties to be lower than the fair market value of those properties as of January 1, 1994." (Emphasis added.)

The taxpayers argue that *Marsh v. Board of Supervisors*, 42 Wis. 502 (1877), provides a bypass of the statutory board of review requirements. They claim that *Marsh* expressly holds that a court has the power to provide relief to the citizens of a municipality when its assessment process is found to violate the constitutional requirement of uniformity. They then reason that because their complaint is couched as a challenge to the uniformity of property tax assessments in the Town, they can proceed apart from the statutory procedures outlined in §§ 70.47(13), 70.85 and 74.37, STATS.

At the outset of oral argument, counsel for the taxpayers framed the issue as: "[T]he single succinct legal question that's raised in this appeal is whether there is any reason to believe that the 120-year-old precedent of Marsh against Board of Supervisors has been overruled." The taxpayers maintain that *Marsh* and a line of cases following it stand for the proposition that "the unconstitutionality of such an assessment can be challenged in a general equitable action brought by one or more property owners." We do not agree that *Marsh* stands for this proposition; the taxpayers misread *Marsh*.

In *Marsh*, the court did not consider the issue of whether property assessments were fair or uniform. There, the landowners complained, inter alia, that the assessors did not follow a statutory requirement that they value the assessed lands "from actual view" as required by statute. *Marsh*, 42 Wis. at 503. The *Marsh* court agreed that ch. 130, Laws of 1868, required that an assessor verify with an affidavit "that he has valued each parcel of realty from actual view of it . . . ." *Id.* at 514. The court then reasoned that "an assessor who fails to make the affidavit impeaches the integrity of

222

his own assessment" and found that "[t]he assessment rolls in question here . . . are impeached upon their face by want of the statutory affidavit." *Id.* at 516. The *Marsh* court then concluded that it had no choice but to hold that no legal tax was levied that year on the properties in the affected towns. *Id.* at 518.

Having addressed the dispositive issue, and having concluded that the towns' property tax was void, the *Marsh* court then went on to gratuitously address the towns' arguments that: (1) the appellants' tax objections were merely technical, and (2) the appellants' objection to the tax levies should fail in equity because they had not paid the taxes prior to objecting. *See id.* at 519. In disposing of these two issues, the court, in dicta, affirmed its jurisdiction over the matter. It is this discussion which the taxpayers reference as providing justification for the instant action. The taxpayers specifically refer to the following language:

> The trouble is that there is no tax; therefore no apportionment of the appellants' share of a tax. It is thus impossible for the appellants or for the court to say what would be their proportion of a valid tax. . . . *An illegal tax is none the less illegal because it may happen to be the same or even less than a legal tax might have been.* When, as in this case, the whole assessment is a fraud upon the law and an evasion of the constitution, every exaction of a tax purporting to be levied upon it, is a wrong; an unlawful exaction of money, not legally or equitably payable, under false color of a legal proceeding.

*Id.* at 520 (emphasis added).

Read in context, the above language fails to support the taxpayers' contention. First, the paragraph (especially the first sentence) supports the conclusion

that the *Marsh* case does not reach the issue of uniform assessments or apportionment between tax parcels. Rather than providing property owners with an avenue to avoid statutory compliance in contesting tax assessments, the *Marsh* court applied existing statutes in holding that "violations or evasions of duty imposed by law [upon assessors as tax officers] to secure a just and uniform rule of assessment . . . vitiate the whole assessment as the foundation of a valid tax." *Id.* at 510. The *Marsh* court addressed the importance of adhering to the statutory requirements in property tax assessments and held that the assessors' failure to comply with a statutory requirement voided the towns' property tax ab initio. The property owners in *Marsh* were not contesting the uniformity of tax assessments but rather the legality of the property tax itself.

Not only does *Marsh* hold that a preliminary statutory violation vitiated the whole tax process, but the taxpayers in the instant case also ignore the *Marsh* court's recognition of the importance of statutory input to the property tax and assessment procedures. First, the court acknowledges that errors in assessment rolls are often addressed "by *certiorari* to review the action of boards of review." *Id.* Further, after considering prior case law, the court noted: "Following closely upon the decisions of this court above cited, came various statutes providing for reassessment and retaxation, both in cases of particular and of general failure of previous taxes. *Such statutes have been always upheld by this court.*" *Id.* at 514 (emphasis added).[6]

---

[6] We also note that the construction of the statutory requirement that an assessor confirm through affidavit that all assessments were from actual view presented a question of law. The dispositive issue in *Marsh* did not require that the court

In sum, we disagree with the taxpayers' reading of *Marsh* as providing justification for this action and conclude that the *Marsh* case did not address the threshold issue here presented. Rather, we read *Marsh* as confined to its holding—a recognition of the power of the court to void a tax that failed to comport with statutory mandates. In *Marsh*, the issue of uniformity was irrelevant to the issue held to be dispositive—the assessors' noncompliance with mandated procedures.[7]

The taxpayers also maintain that two recent cases have addressed the issue of uniformity in tax assessment and are supportive of their right to seek relief. They reference the following two cases: *State ex rel. Levine v. Board of Review*, 191 Wis. 2d 363, 528 N.W.2d 424 (1995), and *Friendship Village v. City of Milwaukee*, 181 Wis. 2d 207, 511 N.W.2d 345 (Ct. App. 1993). We will address the applicability of each in turn.

In *Levine*, two property owners argued to the board of review that the rule of uniformity had been violated because newer homes were assessed at or above fair market value, while older but comparable properties were assessed at substantially less than fair market

---

consider the bases upon which the assessors arrived at their valuations.

[7] We find further justification for our reading of *Marsh* when we consider the line of cases following it. The taxpayers offer *State ex rel. Hensel v. Town of Wilson,* 55 Wis. 2d 101, 197 N.W.2d 794 (1972), and *State ex rel. N/S Assocs. v. Board of Review,* 164 Wis. 2d 31, 473 N.W.2d 554 (Ct. App. 1991), as providing justification for their action. However, in both of those cases the plaintiffs had complied with existing statutory procedures for contesting their assessments. *See Hensel,* 55 Wis. 2d at 107, 197 N.W.2d at 796; *N/S Assocs.,* 164 Wis. 2d at 40-41, 473 N.W.2d at 557. Thus, in neither case was the threshold issue of this appeal considered.

value. *Levine*, 191 Wis. 2d at 367, 528 N.W.2d at 425. The board concluded that the property owners had failed to show that the rule of uniformity had been violated. The owners then proceeded for review through a writ of certiorari. The case eventually reached the supreme court, which concluded that the assessor had used arbitrary and improper considerations. *Id.* at 377, 528 N.W.2d at 429-30.

The taxpayers in the instant case claim that if they can prove the facts as alleged, they will have proven exactly what the *Levine* plaintiffs proved and they argue that "[t]he facts as pled thus reveal a virtually certain right to recover." While the *Levine* court concurred with the plaintiff property owners that the rule of uniformity had been violated, it is important to note that at the outset the *Levine* property owners had complied with the statutory requirements for review of their challenge. The court there did not consider the question of whether a plaintiff can avoid statutory prerequisites to review by asserting a claim of a constitutional violation. Therefore, while the *Levine* court ultimately concluded that the rule of uniformity had been violated, that holding does not speak to the threshold question of the instant case.

*Friendship Village*, the other case offered by the taxpayers, is also factually distinguishable. The plaintiffs there argued that their property was exempt from taxation and sought a declaratory judgment against the city. The city responded that its motion to dismiss should be granted because the plaintiffs had not proceeded under § 74.35, STATS., which "provides the exclusive remedy for a taxpayer seeking determination as to the legality of the assessment of allegedly exempt property." *Friendship Village*, 181 Wis. 2d at 215, 511 N.W.2d at 348. The court there

concluded that consistent with *Family Hosp. Nursing Home, Inc. v. City of Milwaukee*, 78 Wis. 2d 312, 325, 254 N.W.2d 268, 275 (1977), "litigation over whether property is exempt from taxation is not generally subject to limitations which may apply to other property tax disputes." *Friendship Village*, 181 Wis. 2d at 216, 511 N.W.2d at 349.

While *Friendship Village* does hold that a challenge arising from a claim that property is *tax exempt* is outside the purview of the legislatively-mandated procedure for board review, we conclude that the court's holding in *Friendship Village* is not controlling as to the question of whether a challenge to the *uniformity* of a tax assessment procedure can be maintained without compliance with the statutory guidelines. A claim that property is exempt from taxation is a question of law. *Cf. id.* at 218-19, 511 N.W.2d at 350 (summary judgment methodology applied to the question of whether property is exempt from taxation was proper). In contrast, when an issue is raised of whether the rule of uniformity has been violated, the assessor's practices and bases for the contested assessments would be key to making that determination. We conclude that neither *Friendship Village* nor *Levine* speaks to the precise question raised in the instant case.[8]

---

[8] There is one other Wisconsin case in which the plaintiffs bypassed the board of review process. In *Town of Eagle v. Christensen*, 191 Wis. 2d 301, 529 N.W.2d 245 (Ct. App. 1995), Town of Eagle residents alleged that the assessor's practices in a neighboring town, Palmyra, caused Eagle citizens to pay a disproportionate share of property taxes to fund their common school district. *See id.* at 309, 529 N.W.2d at 248. The court there concluded that the plaintiffs appropriately sought judicial relief *because of the absence of any adequate administrative*

██
We conclude that the instant action cannot be maintained without initial compliance with the statutory mandates for review by the Board. It is a fundamental principle of statutory construction that when a legislature has enacted a comprehensive statutory scheme, such is deemed to be exclusive. *See Bourque*, 145 Wis. 2d at 594, 427 N.W.2d at 435. Additionally, when the statutory scheme provides for administrative proceedings, followed by judicial review of the administrative decision, a plaintiff must exhaust the administrative remedy before recourse to the courts. *Id.* By failing to seek review by the Board, the taxpayers have prevented the Board from considering the claimed uniformity violation and concomitantly reviewing the bases for the valuation of properties in the Town. While there have been unique instances where a court has found the statutory requirements for board review to be inapplicable, we conclude that the instant case is not such a case.

██
Finally, the taxpayers dispute the circuit court's finding that even if it found the challenged assessment unconstitutional, the court would be unable to provide relief to the taxpayers. They cite § 75.54(1), STATS., for the following language:

> In all actions in any court of this state, in which either party seeks to avoid or set aside in whole or in part any assessment . . . if the court is of the opinion, after a hearing had, that . . . said assessment, tax or tax proceeding should be set aside, the court shall immediately stay all proceedings in such action . . .

*remedy. Id.* at 317, 529 N.W.2d at 251. This case is distinguishable on its unique posture.

until a reassessment of the property therein can be made . . . .

Notwithstanding the above, the taxpayers' contention that the circuit court erroneously concluded that it could not provide relief is without foundation. Sections 70.47(13), 70.85 and 74.37, STATS., provide a comprehensive means to challenge property tax assessments. The circuit court is not without authority to provide a remedy *for a procedurally correct action*. However, based on the foregoing analysis, the absence of support for the taxpayers' threshold contention that their complaint was properly before the circuit court defeats this final claim. We affirm the circuit court's dismissal of the action.

*By the Court.*—Order affirmed.